April 30, 1990

CLERK OF COURT
SUPREME COURT. CNMI
FILED

90 APR 30 P4: 21

BY:

IN THE SUPREME COURT OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| INOCENCIA T. APATANG,<br>Administratrix of the Estate<br>of Isidro Sablan Tudela,<br><br>     Plaintiff/Appellant,<br><br>  vs.<br><br>MARIANAS PUBLIC LAND<br>CORPORATION,<br><br>    Defendant/Appellee. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | APPEAL NO. 89-013<br>CIVIL ACTION NO. 89-570<br><br><br><br>OPINION |

Argued March 29, 1989

Counsel for Plaintiff/Appellant:    Juan T. Lizama
                                        P.O. Box 1508
                                        Saipan, MP 96950

Counsel for Defendant/Appellee:    Brian W. McMahon
                                        P.O. Box 909
                                        Saipan, MP 96950

BEFORE:  Dela Cruz, Chief Justice; Borja, Associate Justice;
         and Hillblom, Special Judge

DELA CRUZ, Chief Justice:

This is an appeal by Inocencia T. Apatang ("Apatang"), administratrix of the estate of Isidro Sablan Tudela, from a Superior Court order granting summary judgment in favor of Marianas Public Land Corporation ("MPLC").

# I.

## PROCEDURAL AND FACTUAL BACKGROUND

On May 19, 1989, Apatang on behalf of the estate of Isidro Sablan Tudela filed a complaint against MPLC seeking additional public land as compensation for the difference between the area of land promised Tudela by the Trust Territory Government under a 1954 land exchange agreement and the area of land actually conveyed to Tudela. MPLC, the government agency responsible for the management and disposition of public lands under the CNMI Constitution, was sued in its capacity as successor to the Trust Territory Government with respect to the management and disposition of public lands.

Apatang alleged in her complaint that MPLC had agreed in 1980 to "compensate" the estate for the "short exchange"[1] by conveying the difference, i.e. 8,095 square meters. She alleged that MPLC subsequently refused to do so. She also alleged that, as a result, she had suffered damages in the amount of $1,000,000 and that MPLC's refusal to compensate has deprived her of a property right in violation of the Due Process Clauses of the U.S. Constitution and the CNMI Consti-

---

[1] The term "short exchange" is hereafter used to refer to those land exchanges entered into between the Government of the Trust Territory of the Pacific Islands ("Trust Territory Government") and certain private landowners where the government allegedly failed to convey the full area of land promised in the exchange agreement.

143

tution and, therefore, is actionable under 42 U.S.C. § 1983. She prayed for judgment requiring MPLC to convey the difference in land area and for damages.

MPLC filed an answer denying the substance of the complaint. It denied that the estate has a valid claim pursuant to the Agreement to Exchange Lands No. 222 ("E.A. 222"), or that it promised Apatang to convey additional land pursuant to such agreement.

The matter came up for consideration on MPLC's motion for summary judgment and Apatang's cross-motion for summary judgment.

The following facts are not disputed. On February 14, 1952 a Determination of Ownership found Isidro S. Tudela to be the owner of certain real property in As Gonno, Saipan, consisting of Lots 326, 327, 328, 343, and a portion of Lot 319 (collectively the "As Gonno property"). Tudela was denied possession of the property since it was situated in a military area.

On July 24, 1954, E.A. 222 was entered into between Tudela and the Trust Territory Government whereby Tudela agreed to exchange his As Gonno property for a portion of Lot 441 in Papago (the "Papago property"). Tudela's As Gonno property was described as containing an area of "8.1 hectares, more or less". The Papago property Tudela was to receive in exchange from the government was described in E.A. 222 as "containing an area of 10.5 hectares, more or less."

At the time of the exchange agreement each property was generally described in terms of the lots bordering them.

On April 17, 1956, the Trust Territory Government conveyed the Papago property to Tudela which by then had a metes and bounds description and "containing an area of 96,905.0 square meters, more or less." Eight days later Tudela conveyed his As Gonno property to the government.

In 1959, Tudela transferred the Papago property received pursuant to E.A. 222, for valuable consideration, to another person.

In the early 1980's, MPLC began receiving complaints from people who questioned the fairness of the land exchanges. As a result, MPLC by board resolution in 1980 began entertaining these complaints on a case-by-case basis.

In 1985, the Second Constitutional Convention amended Article XI, Section 5(b), of the CNMI Constitution to permit MPLC to transfer freehold interests in public lands "for land exchanges to accomplish a public purpose as authorized by law." Subsequently, in 1987, P.L. 5-33 (2 CMC § 4141, et seq.) was enacted. This law defined "public purpose" to include, among others, the satisfaction of any land exchange agreement entered into by the Trust Territory Government in which the full area of public land agreed upon was not conveyed to a landowner. See generally, 2 CMC § 4143(e).

## II.

### ISSUES RAISED

The first issue is whether MPLC has a legal duty to compensate the estate of Isidro S. Tudela for the difference in land area between that promised under E.A. 222 and the land area which was actually conveyed Tudela by the government.

The second issue is whether Tudela has already received what he had bargained for under E.A. 222, regardless of P.L. 5-33, as amended, which allows compensation for short exchanges.

The last issue is whether MPLC is estopped from denying Apatang's short exchange claim since MPLC had pursuant to a 1980 board resolution, compensated other land claimants who had filed similar claims for "short exchanges."

## III.

### STANDARD OF REVIEW

We review <u>de novo</u> an order granting summary judgment. <u>CNMI Government v. Micronesian Insurance Underwriters</u>, 2 CR 1164. (D.NMI App.Div. 1987). Our role, as a reviewing court, is limited to determining whether there is a genuine issue of material fact and, if not, whether the substantive law was applied correctly. <u>Manglona v. Camacho</u>, 1 CR 820 (D.NMI App.Div. 1983).

146

IV.

ANALYSIS

We begin our analysis by reviewing the material facts of the case and determining whether the laws applicable to the case were correctly applied by the trial court.

Both parties do not dispute any of the material facts, which we recited earlier. The main issue for resolution is whether Isidro Sablan Tudela was "fully" compensated by the Trust Territory Government pursuant to E.A. 222 within the meaning of P.L. 5-33, as amended by P.L. 6-43.

The facts show that Isidro Sablan Tudela originally owned the As Gonno property which has a land area of 8.1 hectares, more or less. The facts also show that Tudela agreed to exchange his land with the government for 10.5 hectares of public land in Papago. The deed Tudela subsequently received from the government described the Papago land conveyed to Tudela as containing only 9.69 hectares. Tudela's heirs are now seeking the difference. They base their claim on P.L. 5-33.[2]

We note that in several cases brought before the Trust Territory High Court in the 1970's, that Court had dismissed short exchange actions, similar to this, on the ground that

_____

[2] We note that Apatang, before the Superior Court, had relied on 2 CMC § 4143(e)(5) as the basis for her action against MPLC. On appeal, however, she argues that § 4143(e)(4) is the basis on which she is entitled to recovery.

We also note that P.L. 6-43 was enacted subsequent to the entry of the order granting summary judgment.

147

the six-year statute of limitations for recovery based upon a breach of contract bars such actions. See, for example, <u>Crisostimo v. Trust Territory of the Pacific Islands</u>, 7 TTR 375 (High Court App.Div. 1976).

The statute of limitations bar with respect to land matters was a concern raised during the First CNMI Constitutional Convention, and the Schedule on Transitional Matters to the original CNMI Constitution provides that:

> The legislature shall study whether to repeal a statute of limitations currently in force in the Commonwealth <u>with respect to land</u> in order for the Commonwealth <u>to provide compensation for past transactions</u>. If a statute is repealed after study, <u>the compensation provided by the Commonwealth shall be</u> <u>limited to priority with respect to the distribution of public lands</u> and shall not affect a right in property that vested under the repealed statute of limitations.[3] (<u>Emphasis added</u>)

NMI Constitution: Schedule On Transitional Matters, Section 7, ("Schedule").

The analysis to Section 7 notes that "[t]he legislature may permit claims against the Commonwealth Government by persons <u>who were compensated inadequately for transfer of interests in property in the past</u>, even though the applicable statute of limitations have expired." (<u>Emphasis added</u>). Where such limitations bar is lifted to permit the filing of claims, the court, or the administrative agency

---

[3] The legislature apparently had made such a study, prior to the passage of the Homestead Compensation Act, P.L. 3-103. See, the Law Revision Comment immediately following 2 CMC § 4351.

could then consider previously expired claims and determine the damages suffered by an aggrieved party. Compensation for damages is limited to one being given priority to public land. See generally, Analysis of the Constitution, pp. 199-202.

Thus, there is a constitutional recognition that the legislature, after a study, may decide to lift the applicable statute of limitations bar and provide for consideration by the court or an administrative agency of valid claims for inadequate compensation received under past land transactions with the Trust Territory Government. Such recognition, however, limits the permissible remedy to priority being given a claimant in public land.

MPLC, we note, is generally prohibited from transferring a freehold interest in public land for ten-years, except initially for homesteads. NMI Constitution, Article XI, section 5(b). This exception was subsequently expanded to permit freehold transfers of public land "for land exchanges to accomplish a public purpose as authorized by law." NMI Constitution, Article XI, section 5(b), as amended in 1985.

Pursuant to the 1985 amendment to Article XI, section 5(b), the legislature enacted Public Law 5-33, the Public Purpose Land Exchange Authorization Act of 1987. 2 CMC § 4141, et seq. The intent of such law is to enable the CNMI Government to acquire private land essential to public projects, and for the requirements of Section 7 of the Schedule on Transitional Matters to be expeditiously

accomplished through land exchanges.

■ The Public Purpose Land Exchange Authorization Act authorized MPLC to transfer a freehold interest in public land pursuant to land exchange agreements to accomplish any of the public purposes enumerated under the Act. 2 CMC § 4144(a). "Public Purpose" is defined, inter alia, to include the following:

> (4) [the] [p]rovision of compensating relief to persons or to their heirs or successors in interest who have received no compensation or who have been inadequately compensated for land takings or encroachments qualifying as cause for compensation under the Homestead Compensation Act of 1984 (Article 5 of Chapter 3 of Division 4) of Title 2 of the Commonwealth Code;
>
> (5) Satisfaction of any land exchange agreement entered into by the Commonwealth Government, by the Trust Territory Government or a part thereof, or by the United States Naval Administration, and involving land in the Northern Marianas, in which the full area of public land agreed upon was not conveyed to the landowner or to his or her heirs or successors in interest; ... (Emphasis added)

2 CMC § 4143(e).

■ On appeal, Apatang argues that the appropriate "public purpose" provision to be applied to this case is 2 CMC § 4143(e)(4), rather than 2 CMC § 4143(e)(5). We disagree. The Superior Court was correct in its determination that subsection (e)(5) is the appropriate basis for consideration of Apatang's claim. We find that this case does not involve a land encroachment situation. Neither is it one involving a land taking, say, for a roadway. Instead, the facts show that Apatang seeks satisfaction of a land exchange agreement

150

entered into between her father Isidro S. Tudela and the Trust Territory Government, in which the full area of public land agreed upon was allegedly not conveyed to Tudela. Thus, the applicable "public purpose" provision here is subsection (e)(5).

We also find that the Homestead Compensation Act of 1984, 2 CMC § 4351, et seq., is not the appropriate law to apply under the facts of this case. The Homestead Compensation Act, which lays out the criteria to consider for purposes of 2 CMC § 4143(e)(4), was primarily intended to apply to four major categories: (1) for private land takings, without adequate compensation to a landowner, for public roads; (2) for government encroachments on private lands; (3) for takings of private lands assumed by the government to be public land or assumed by the government to belong to other private individuals; and (4) for taking of private lands wrongly assumed to be within the public domain as a result of erroneous translations of pertinent land documents.

Even assuming, however, that the Homestead Compensation Act is somehow applicable, as Apatang argues, we determine that this Act is no longer a viable basis for filing a claim for compensation since it required the filing of an application for homestead compensation within two (2) years of its effective date, January 26, 1984. Further, the compensatory intent of the Homestead Compensation Act has been superceded by the Public Purpose Land Exchange Authorization Act. 2 CMC

151

§ 4143(e)(4).[4]   Under subsection (e)(4), if a claimant prevails, he would receive a freehold rather than a homestead interest, as compensation.

Having determined that the appropriate law to apply to this case is 1 CMC § 4143(e)(5) (i.e. a claim to satisfy a land exchange agreement entered into with the Trust Territory Government "in which the full area of public land agreed upon was not conveyed to the landowner"), we turn to the question of whether Tudela has been fully compensated by the Trust Territory Government by virtue of the 1956 conveyance of the Papago property to Tudela.

There is no dispute that pursuant to E.A. No. 222, the government promised to convey to Tudela a land area described as "containing an area of 10.5 hectares, more or less." The government deeded a portion of Lot 441 in Papago pursuant to the exchange agreement, but with a metes and bounds survey description of the Papago property containing only 9.6905 hectares, more or less.

The Superior Court determined that the use of the phrase "more or less" in the land exchange description of the Papago property denotes an approximation of the land area agreed to

---

[4]   In comparing the provisions of the Homestead Compensation Act with the subsequently enacted Public Purpose Land Exchange Authorization of 1987, we note that the latter provides for an outright transfer of a freehold interest in public land, while the former merely provides for issuance of a homestead compensation, subject to the constitutional limitations governing homesteads in general. See, 2 CMC § 4356.

152

be conveyed, and that the phrase cannot be interpreted as requiring the government to convey _exactly_ 10.5 hectares. We agree with such conclusion.

The Superior Court further determined that Tudela knew that the Papago property might not contain exactly 10.5 hectares, based on paragraph 3 of E.A. 222, which reads:

> "3. It is understood that the areas shown above for the [As Gonno property] and [the Papago property] are estimates only, and may be modified or revised by subsequent survey of said parcels. It is further understood that any such modification or revision shall not affect the terms and conditions of this agreement".

We also agree with this conclusion. It then went on to conclude that since Tudela assumed the risk that the Papago property might actually contain less than 10.5 hectares, he has received what he had bargained for and was thus fully compensated. Therefore, Tudela acquires no right to compensation under P.L. 5-33. On this, we disagree.

While we agree that the term "more or less" and paragraph 3 of the land exchange agreement denote an approximation of a land area, such phrase and provision should be applied to the specific circumstances of each particular case. For example, if one were promised 5 hectares of land and upon survey he receives only 3 hectares, it would reasonably appear that he would be entitled to the difference of 2 hectares. The question thus becomes one of where to draw the line. Stated differently, is the

153

difference substantial? If so, then a claimant should be entitled to the difference, absent the statute of limitations bar.

In the case of Isidro Sablan Tudela, there is a difference of 8,095 square meters. This constitutes almost eight percent (8%) of the total land area promised Tudela by the government. One may reasonably view such difference (or deviation) as being facially de minimis, and therefore within an acceptable range of risk assumed by Tudela. If this alone were the case, then we would be inclined to agree with the Superior Court that Tudela has been fully compensated.

However, the passage of P.L. 5-33 requires MPLC to fully satisfy land exchanges "in which the full area of public land agreed upon was not conveyed to the landowner." (Emphasis added). MPLC is obligated to effectuate the purpose and intent of the statutory policy with respect to short exchanges. The statute requires satisfaction where "the full area of public land agreed upon" has not been met; not merely where the approximate area has been conveyed pursuant to a subsequent survey, and notwithstanding paragraph 3 of the land exchange agreement.

The Superior Court interpreted the clause "full area of public land agreed upon" to mean that Tudela, by assuming the risk that the Papago land might contain less than 10.5 hectares upon actual survey, has been fully compensated because he has received what he had bargained for. Therefore, since he has been "fully compensated" under the

154

exchange agreement he has received the full area of public land agreed upon. This means that whenever a land exchange agreement describes the land to be conveyed with the phrase "more or less" and has an assumption of risk clause, the landowner is deemed fully compensated and should not be compensated pursuant to P.L. 5-33. We disagree with this reasoning.

The enactment of P.L. 5-33 should be interpreted in a manner so as to give it meaning. If we were to accept the Superior Court's reasoning, then subsection (e)(5) of P.L. 5-33 would have no purpose. P.L. 6-43 which subsequently amended subsection (e)(5) of P.L. 5-33 clarified that subsection (e)(5) is intended to compensate landowners who did not receive the full area of public land as agreed in the land exchange agreement. Further, under P.L. 6-43, the legislature drew the line permissible for compensation by providing for compensation where the difference between what was agreed upon and what was subsequently conveyed exceeds an area of 500 square meters.

P.L. 6-43 clearly states:

> "A landowner is deemed inadequately compensated in his or her land exchange if the short exchange exceeded five hundred (500) square meters. Exchange shall be possible notwithstanding 'more or less' language found in exchange agreements".

This means that where a landowner agreed to exchange his land for public land whose area is described with the phrase "more or less" he would be entitled to the difference not conveyed pursuant to the exchange agreement if the difference

155

in area is more than 500 square meters.

MPLC vigorously argues that because a claimant agreed to the risk of variance and because the lands subject to the exchange were circumscribed by the phrase "more or less", therefore, Tudela has been fully compensated. This argument requires us to disregard P.L. 5-33 and 6-43 which were enacted to address the short exchange claims that Tudela's case exemplifies. Tudela received less land than what was agreed upon. His claim, but for P.L. 5-33 and 6-43, would be barred by the applicable statute of limitations addressed by Section 7 of the Schedule on Transitional Matters. P.L. 5-33 now permits the filing of such claims with MPLC. P.L. 6-43 clarifies that if a land claimant was "short-changed" by over 500 square meters he is "deemed inadequately compensated."

The issues of laches, estoppel, and statute of limitations have little relevance, if any, to a determination of whether a claimant is entitled to the difference in land area promised and not conveyed. Here, by statute, any limitations bar and any defense of laches have been set aside to permit the filing of land exchange claims that were previously barred. Here, the issue of governmental estoppel does not have any relevance because MPLC is required by law to consider and act upon the estate's short exchange claim. Whether Tudela previously had a viable claim or not under either contract or property law is also irrelevant because P.L. 5-33 and P.L. 6-43 provides the basic elements required for consideration and compensation.

156

An underlying question which we believe should be addressed is whether P.L. 5-33 and P.L. 6-43, to the extent they permit MPLC to convey public lands to private individuals as compensation for short exchanges is constitutional.[5/] We find both statutes to be constitutional.

First, the framers of the CNMI Constitution were generally aware of the various land problems which arose during the Trust Territory Administration and the difficulty encountered by land claimants in seeking relief due to the failure to timely file a claim in court. Secondly, they were aware of situations involving government encroachments on private lands and of other private land takings such as for highways which were never compensated. Third, there was a general concern raised that such land problems should be addressed and resolved, notwithstanding the passage of time. See, Section 7 of the Schedule on Transitional Matters.

It is in light of these public concerns that the amendment to the Constitution to permit MPLC to provide for the freehold transfers of public land, as opposed to merely providing homestead compensations, was made. Art. XI, Section 5(b), CNMI Constitution.

The Public Purpose Land Exchange Authorization Act is the law intended to implement the amendment to Article XI, Section 5(b), of the NMI Constitution. This law provides for

---

[5/] MPLC, at oral argument, stated to the Court that it is not challenging the constitutionality of either statute.

157

the exchange of public land in order to acquire private lands for public projects. This law also permits MPLC to address the various land exchange and other land taking claims which arose during the Trust Territory and previous administrations.

We find that the Public Purpose Land Exchange Authorization Act is constitutional because its basic aim is to accomplish a public purpose, i.e. to resolve the inequities of past land takings, either those arising under the previous land exchange programs, land encroachments by the government, or uncompensated land takings for highways and roadways. Its aim is not, as MPLC argues, to "siphon" away public lands from the homesteading program but rather to correct a situation which for so many years has remained unresolved. Individual members of the public were the apparent victims of actions or inactions of the government so that the ultimate beneficiary under the Act would be the public itself through the resolution of these land problems.

We conclude that the estate of Isidro Sablan Tudela was short-changed by 8,095 square meters within the meaning of P.L. 5-33 and P.L. 6-43, and the estate is entitled to recover, as compensation from MPLC, public land comparable in value thereto.

The order granting summary judgment in favor of MPLC is REVERSED, and this matter is REMANDED to Superior Court with instructions to enter judgment (1) that the Estate of Isidro Sablan Tudela is entitled to compensation comparable in value

158

to the difference of 8,095 square meters of Papago land not conveyed Tudela pursuant to E.A. 222; and (2) ordering the Marianas Public Land Corporation to determine such compensation in accordance with 2 CMC § 4144(b).

Entered this _____30th.____ day of April, 1990.

_____
Jose S. Dela Cruz, Chief Justice

_____
Jesus C. Borja, Associate Justice

_____
Larry L. Hillblom, Special Judge